**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER FOSTER, | : | Civil No. |
| Plaintiff, | : | |
| v. | : | |
| JP MORGAN CHASE BANK, N.A. | : | |
| Defendant. | : | |

**COMPLAINT**

**A.     Jurisdiction and Venue**

1.     Jurisdiction arises under 15 U.S.C. § 1332, together with the pendent jurisdiction of the court. Supplemental jurisdiction over Plaintiff's state law claims is granted by 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

2.     Venue lies in this judicial district in that the events which gave rise to this claim occurred here and the property which is the subject of the action is situated within this district.

**B.     Parties**

3.     Plaintiff, CHRISTOPHER FOSTER, is an adult individual presently residing at 3501 Gloucester Lane, Philadelphia, PA.

4.     Defendant, JP MORGAN CHASE BANK, N.A. (Chase) is a corporation licensed to do business in the Commonwealth of Pennsylvania, regularly conducting business in the City of Philadelphia and having a principal place of business with a registered corporate headquarters located at 201 N. Central Ave., Phoenix AZ 85004; at all times relevant, acting alone or in concert with others, formulated, directed, concealed, controlled, conspired, substantially assisted, enabled and/or participated in the acts and practices set-forth in this Complaint.

**C.     Factual Allegations**

5.     At all times relevant hereto, defendants acted by and through their agents, servants, and

employees who acted within the scope of their authority and within the course of their employment.

6. On or about July 11, 2014, plaintiff visited a dealership by the name of AUTO FINDERS INC. at 1515 Bristol Pike Bensalem, PA 19020 and purchased a 2007 Jeep Commander, VIN # 1J8HG48K17C636777 ("the Vehicle").

7. Prior to the execution of any contracts, AutoFinders's agents made the following representations expressly and/or impliedly about the subject vehicle:

    a) AutoFinders would transfer lawfully Title and registration and/or submit the appropriate paperwork to the Commonwealth;

    b) The sale was conducted and the paperwork was completed lawfully.

    c) Plaintiff was being charged lawfully amounts paid to public officials for title, registration and lien fees;

    d) AutoFinders was charging a lawful documentary fee;

8. Prior to the execution of any agreements, AutoFinders concealed the following facts from the Plaintiff about the subject vehicle:

    a) AutoFinders could not and did not transfer lawfully Title and/or registration and/or submit the appropriate paperwork to the Commonwealth.

    b) AutoFinders did not conduct the transaction or complete paperwork lawfully;

    c) AutoFinders charged an unlawful documentary fee;

9. By a Retail Installment Sales Contract dated July 11, 2014, the plaintiff and AutoFinders ostensibly and apparently agreed to the terms for the financed purchase/sale of the vehicle at a purchase price of $14,450 (Ex. A).

10. After purchase, Plaintiff went back to AutoFinders and obtained temporary tags and

thereafter obtained temp tags two (2) more times from PENNDOT due to lack of title to the Vehicle.

11. AutoFinders never obtained and consequently never transferred Title ownership and/or registration and/or submit the appropriate paperwork to the Commonwealth.

**Contact with Chase**

12. On or about January 2015, plaintiff contacted Chase to request a copy of the title which Chase advised it did not have (Ex B).

13. On or about May 2015, plaintiff again contacted Chase to request a copy of the title and other documents regarding his deal with AutoFinders which title Chase again advised it did not have (Ex. C).

14. On or about May 2015, Chase contacted plaintiffs to request they complete an affidavit regarding AutoFinders' fraud in the transaction.

15. Plaintiffs completed the aforesaid affidavit and therein requested that Chase return all payments and down payment money due to the fact that Chase could not provide title to the vehicle in accordance with the secured contract terms in the RISC (Ex. D).

16. Plaintiff contacted the Pennsylvania State Police and was advised of numerous other AutoFinders customers being the victims of AutoFinders sales fraud including but not limited to multiple victims having been sold a vehicle to which AutoFinders did not have title.

17. On or about July 20, 2015, Chase advised it needed seven (7) more days to research claims of AutoFinders's fraud concerning the disputed transaction for the Vehicle.

18. Plaintiffs have never heard back from Chase regarding their request to refund their money and cancel the transaction the terms of which Chase cannot fulfill.

19. Plaintiffs will be unable to use the vehicle upon expiration of registration extensions given by PennDot through the intercession of the Pennsylvania State Police.

20.     At all times herein, Chase advised plaintiffs to continue making their monthly payments.

**Chase's Agreement with AutoFinders and the Transaction History**

21.     Prior to the transaction at issue, upon information and belief Chase and AutoFinders had an agreement whereby AutoFinders as a dealer customer of Chase represented and warranted that it possessed indefeasible title immediately prior to purchase by a buyer of any vehicle which AutoFinders sought to assign the sale contract to Chase.

22.     Accordingly, as part of the subject disputed purchase, AutoFinders promised to and was legally bound to transfer Title ownership to plaintiff under the Agreement and submit records to the Commonwealth to transfer permanent registration to plaintiff.

23.     AutoFinders was a merchant in the regular ordinary business of selling vehicles to consumers, such as the subject vehicle.

24.     AutoFinders is out of business, under criminal investigation, and is without assets.

25.     Plaintiffs were good-faith purchasers for value in the ordinary course of business.

26.     Plaintiffs have not been able to register and therefore use the vehicle consistently since date of purchase.

27.     AutoFinders represented that it was signing the Title Certificate of the car over to plaintiff by representing that it would process the Title with the Department of Motor Vehicles, by acting as an agent of the Department of Motor Vehicles to provide him with a temporary tag and a temporary registration, and by using various contract documents that asserted that he was the owner of the car and was giving up a security interest in the car.

28.     Although AutoFinders gave plaintiff possession of the car on the date of sale, because AutoFinders did provide the vehicle as represented and promised, did not forward the amounts to the

4

Commonwealth, and/or did not transfer properly Title ownership and registration, did not recognize plaintiff as the owner, it did not give him actual use of that credit that day.

29. Chase is a licensed finance company in the Commonwealth of Pennsylvania.

30. The established business practices discussed in the preceding paragraphs were created, implemented, approved, and/or supervised by the Defendants.

31. As a result of the unlawful actions described herein, the plaintiffs have been deprived of the use of the vehicle, has incurred expenses for replacement transportation, has suffered damage to his credit rating and credit reputation, and has suffered extreme emotional distress, frustration, humiliation, and/or embarrassment.

32. Plaintiff has been and will continue to be financially damaged due to AutoFinders and CHASE's intentional, reckless, wanton, and/or negligent failure to honor their contractual obligations and cancel this deal and refund plaintiff's payments towards the vehicle.

33. During all times relevant AutoFinders deceived the plaintiff into believing its actions were lawful, and/or concealed their actions' unlawful nature and CHASE continued to deceive plaintiff that it needed to investigate the deal when CHASE knew that AutoFinders did not have title to the vehicle and therefore CHASE had no legal basis to assert any legal obligation of plaintiff concerning payments towards the vehicle.

34. At all times relevant, the Plaintiff relied on AutoFinders and CHASE's apparent and claimed experience, sophistication and expertise in inspecting, repairing, selling and/or financing motor vehicles.

35. Pursuant to the express terms of the RISC, State common law of assignments, and Statutory law, CHASE "stepped into the same shoes" as the Dealer Defendants and became derivatively, jointly, severally and fully liable for all of the Dealer Defendants' misconduct.

36. Despite full knowledge of the circumstances, defendant CHASE has refused to acknowledge its potential derivative liability.

### COUNT I - FRAUD
### (Direct Liability of Chase)

37. Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

38. Failure to convey Title renders a motor vehicle sale illegal, unenforceable and void, and/or voidable at the consumer's election[1].

39. Chase knew from the outset of the transaction that no lien on title had been conveyed to it by AutoFinders but failed to advise plaintiff of the failure of title.

40. Upon information and belief, Chase communicated with AutoFinders and confirmed that it did not have title to the vehicle at the time of its sale to plaintiff.

41. When plaintiff communicated with Chase in 2015 as described herein, Chase misrepresented that it was investigating the issue when it knew or should have known based on its standard business practices expressed in the Agreement and based on its knowledge that no title for the subject vehicle was conveyed in the transaction that no investigation was necessary the contract was void and unenforceable for dealer's failure to convey title.

42. When Chase sent plaintiff monthly payment statements and instructed plaintiff to continue making payments towards the RISC, Chase knew or should have known that such statements were false based on its standard business practices expressed in the Agreement and based on its knowledge that no title for the subject vehicle was conveyed in the transaction that the contract was void and unenforceable for dealer's failure to convey title.

43. By advising plaintiffs to continue payments, Chase misrepresented that it potentially

---

[1] Empire Fire & Marine Ins. Co. v. Banc Auto, Inc., 897 A.2d 1247, 1250-1251 (Pa.Super. 2006), app. den. 588 Pa. 782, 906 A.2d 543 (2006); Miles v. Zorzi, 88 Pa. Super. 231; 1926 Pa. Super. LEXIS 160 (Pa.Super. 1926), 233; Brenner v. Pecarsky, 86 Pa. Super. 414; 1925 Pa. Super. LEXIS (Pa.Super. 1925)

6

had legal recourse against plaintiff under the RISC which it knew or should have known to be void and unenforceable for dealer's failure to convey title.

44. The misrepresentations and omissions identified in the immediately preceding paragraphs were known or should have been known to Chase to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced him to continue payments towards the vehicle.

45. Chase knew that the Plaintiffs had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations regarding the RISC.

46. The Plaintiffs relied on Chase's misrepresentations and was induced to make payments towards the RISC, a void and unenforceable contract.

47. As a result of the aforementioned conduct, the Plaintiff suffered the damages outlined above and below.

48. Chase's actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

### COUNT II - FRAUD
### (Vicarious Liability of Chase)

49. As the assignee of the RISC, CHASE is subject to all of the same claims as the dealer AutoFinders.

50. Prior to the execution of any contracts, AutoFinders's agents made the following representations expressly and/or impliedly about the subject vehicle:

a) AutoFinders would transfer lawfully Title and registration and/or submit the appropriate paperwork to the Commonwealth;

b) The sale was conducted and the paperwork was completed lawfully.

7

    c)    Plaintiff was being charged lawfully amounts paid to public officials for title, registration and lien fees;

    d)    AutoFinders was charging a lawful documentary fee.

51.    Prior to the execution of any agreements, AutoFinders concealed the following facts from the Plaintiff about subject vehicle:

    a)    AutoFinders could not and did not transfer lawfully Title and/or registration and/or submit the appropriate paperwork to the Commonwealth.

    b)    AutoFinders did not conduct the transaction or complete paperwork lawfully;

    c)    AutoFinders charged an unlawful documentary fee;

52.    The misrepresentations and omissions identified in the immediately preceding paragraphs were known or should have been known to AutoFinders to be false when made, were material in nature, and were made with the intent to deceive, defraud and/or induce the Plaintiff, and in fact, induced him to purchase the automobile at the price listed in the purchase agreement.

53.    AutoFinders knew that the Plaintiff had no special knowledge in the purchase, financing and condition of automobiles and would rely on their representations.

54.    The Plaintiff relied on the AutoFinders's misrepresentations and was induced to sign the RISC and other documents related to which he apparently and ostensibly purchased and financed the aforementioned automobile at the inflated amount listed in the purchase agreement.

55.    As a result of the aforementioned conduct, Plaintiff suffered the damages outlined above and below.

56.    AutoFinders's actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

## COUNT III
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES

57. Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

58. The actions and omissions of Defendant as hereinbefore and hereinafter described constitute violations of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S.A. § 201-1 *et. seq.*, which are in-and-of-themselves fraudulent, deceptive and misleading, constituting violations of the Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 et. seq.

59. The actions and omissions of Defendants has hereinbefore and hereinafter described constitute violations of the following sections of the UTPCPL 73 P.S. § 201-2(4):

> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> 
> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
> 
> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
> 
> (ix) Advertising goods or services with intent not to sell them as advertised;
> 
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

**Pennsylvania Automotive Industry Trade Practices**

60. The defendants actions, including misrepresenting the vehicle's history, condition and value, misrepresenting the seller and the terms and conditions of the sale and finanncing, as set forth in more detail above and below, and/or the respective sales documents, violated the following provisions of the Pennsylvania Automotive Industry Trade Practices:

> § 301.2. Advertising and sales presentation requirements
> …
> (3) The use of an advertisement or sales presentation as part of a plan or scheme not to sell the vehicles or services advertised, or both, or not to sell the vehicles or services advertised or presented at the advertised price. The following will be *prima facie* evidence of a plan or scheme not to sell the motor vehicles or services or not to sell the vehicles or services at the advertised or represented prices:

9

> (i) Refusing to show, display, sell or otherwise provide the goods and services advertised in under the terms of the advertisement.
> …
> (iv) Showing, demonstrating or delivering advertised goods or services which are obviously defective, unusable or unsuitable for the purpose represented or implied in the advertisement or sales presentation.
>
> (4) The failure or refusal to sell a motor vehicle or other goods or services under terms or conditions, including price or warranty, which a motor vehicle manufacturer or dealer or repair shop has advertised or otherwise represented.
>
> (5) The representation in an advertisement or sales presentation that a motor vehicle or motor vehicle goods or services are of a particular style, model, standard, quality or grade if they are of another or if the representation conflicts with a written notice or disclosure required under this chapter.
>
> (6) The making of a representation or statement of a fact in an advertisement or sales presentation if the advertiser or salesperson knows or should know that the representation or statement is false and misleading or if the advertiser or salesperson does not have sufficient information upon which a reasonable belief in the truth of the representation could be based.

## COUNT IV
## VIOLATIONS OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT(FCEUA)
## 73 P.S. § 2270.1 et. seq.
## AND THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (UTPCPL)
## 73 P.S. § 201-1 et. seq.

61. Plaintiff incorporates all facts and allegations set forth in this Complaint.

62. Defendant is a "creditor" and/or "debt collector" as defined by 73 P.S. § 2270.4 of the FCUEA.

63. Plaintiff is a "consumer" as defined by 73 P.S. § 2270.4 of the FCUEA.

64. CHASE had no right to payments towards the vehicle insofar as the RISC was void and unenforceable for lack of title.

65. Insofar as CHASE demanded continued payments despite explicit notice of AutoFinders's misconduct regarding title and the fraudulent RISC, it violated the FCEUA.

66. All of the above contacts by Defendant Chase were "communications" or actions relating to a debt as defined by 73 P.S. § 2270.3 of the FCUEA.

67. The foregoing acts and omissions of these Defendants constitute numerous and multiple

violations of the FCEUA and UTPCPL, including but not limited to 73 P.S. § 2270.4(a), as evidenced by the following conduct:

    a) The use of false, deceptive or misleading representations or means in connection with the collection of a debt;

    b) Making false, deceptive, or misleading representations with regard to the character, amount or legal status of the alleged debt;

    c) The use of false representation or deceptive means to collect a debt or obtain information about a consumer;

    d) The use of unfair or unconscionable means to collect or attempt to collect an alleged debt;

    e) Attempting to collect any amount not authorized by agreement or permitted by law.

68. Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law with the purpose of coercing Plaintiff to pay the debt.

69. As a result of the above violations of the FCUEA and UTPCPL, Plaintiff has suffered ascertainable loss in the amount of payments made towards the vehicle entitling him to an award of statutory, actual and treble damages and attorney's fees and costs.

### COUNT V - BREACH OF CONTRACT

70. Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

71. As the assignee of the RISC, CHASE is subject to all of the same claims as the dealer defendants.

72. This and all subsequent causes of action are pleaded in the alternative and/or in addition to Plaintiff's cause of action for fraud.

73. In the alternative, on April 11, 2013, plaintiff apparently and/or ostensibly was misled

to believe that he had contracted with AutoFinders for the purchase of the vehicle as well as taxes, registration, tags, service contract, and transfer of title, which agreement was final and included all payment and financing terms.

74. Plaintiff performed or satisfied all of his obligations under the aforementioned finance purchase agreement.

75. The Plaintiffs were at no time relevant in default.

76. AutoFinders and CHASE are in breach of the aforementioned contract in that they have in the past and continue without justification to negligently, intentionally, willfully, fraudulently, and/or recklessly failed and/or refused to deliver to plaintiff the vehicle for which plaintiff contracted under the agreed terms and/or demanded the return of the vehicle or deprived plaintiff of the quiet enjoyment of the vehicle or the amount of credit promised.

77. AutoFinders and CHASE breached and/or anticipatorily breached all of the agreements thereby relieving plaintiff of any duty to perform thereunder.

78. As a result of AutoFinders and CHASE's breach, the plaintiff suffered the damages outlined above and in the following additional ways:

    a. increased purchase costs;

    b. deprived of the use and enjoyment of the vehicles;

    c. spent time resolving problems created by Defendants' breach;

    d. incurred other incidental and consequential damages, including emotional distress; and,

    e. incurred increased interest and other expenses for financing the purchase of the vehicle.

79. AutoFinders's and CHASE actions as hereinbefore described were reckless, outrageous, willful, and wanton, thereby justifying the imposition of exemplary, treble and/or punitive damages.

## PRAYER FOR DAMAGES

Plaintiff demands judgment against defendant as follows:

A. For fraud, actual and punitive damages;

B. For violations of the FCEUA/UTPCP, actual and compensatory damages, treble damages, attorney fees and costs; and such other and further relief as the Court shall deem just and proper.

C. For Breach of Contract actual damages and declaration that the RISC is void and unenforceable.

**ROBERT P. COCCO, P.C.**

BY:   /s/Robert P. Cocco
        ROBERT P. COCCO, P.C.

Attorneys for Plaintiff

Dated: Aug. 31, 2015